McGREGOR W. SCOTT
United States Attorney
DAWRENCE W. RICE, JR.
STANLEY A. BOONE
Assistant U.S. Attorneys
Suite 4401, Federal Courthouse
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:07-cr-00151 OWW |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION TO DISMISS THE |
| v. | ) | INDICTMENT BASED ON THE SECOND |
| | ) | AMENDMENT. |
| | ) | |
| | ) | |
| JOHN McCARTNEY, | ) | |
| | ) | |
| Defendant. | ) | Date: August 25, 2008 |
| | ) | Time: 9:00 a.m. |
| | ) | Courtroom Three |
| | ) | Honorable Oliver W. Wanger |

The defendant's motion to dismiss the indictment charging him with possession of machineguns and handgrenades based on the Supreme Court's recent Second Amendment decision in District of Columbia v. Heller, 554 U.S. ---, 2008 WL 2520816 (2008) is without merit. See United States v. Gilbert, 2008 WL 2740453 (9th Cir., July 15, 2008) (unpublished) (cited and attached pursuant to FRAP 32.1, and 9th Cir. R. 36-3): "The Supreme Court's recent decision in District of Columbia v. Heller, 554 U.S. --- (2008), holding that the Second Amendment protects a limited individual right to possess a firearm - unconnected with service in a militia - does not alter our conclusion. Under Heller, individuals still

1

1  do not have the right to possess machineguns or short-barreled
2  rifles, as Gilbert did, and convicted felons, such as Gilbert, do
3  not have the right to possess any firearms.  Id., Slip. Op. at
4  27."

5      In Heller, the Supreme Court affirmed the decision of the
6  D.C. Circuit striking down the District of Columbia's handgun ban.
7  The Supreme Court's decision concluded that the D.C. law, which
8  prohibited any person from possessing a handgun and required that
9  any other lawfully owned firearm be kept unloaded and disassembled
10 or bound by a trigger-lock while in the home, violated the
11 individual right to keep and bear arms protected by the second
12 Amendment to the U.S. Constitution.  See Heller, 2008 WL 2520816,
13 at *3.

14     In a lengthy majority opinion tracing the history of the
15 Second Amendment, the Heller Court held that the Second Amendment
16 protects an individual's right to possess firearms, explaining
17 that that right is not limited to the need to maintain a militia.
18 In other words, the right is an individual one, rather than a
19 collective one designed solely for the support of a militia.  At
20 bottom, the Court's holding was that the Second Amendment right
21 protects an individual's right to maintain a handgun in his or her
22 home for the purpose of self defense.  See Heller, 2008 WL
23 2520816, at *29-33.

24     The Supreme Court did not identify the precise contours of
25 the Second Amendment right, nor did it set out the appropriate
26 standard of review for judging whether a government regulation of
27 firearms violates the Second Amendment, noting that D.C.'s handgun
28 ban would not pass muster "[u]nder any of the standards of

scrutiny that we have applied to enumerated constitutional rights." See Heller, 2008 WL 2520816, at *29. It did, however, include several passages describing the types of firearms and regulations to which its holding does not apply.

It began this effort by noting that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Heller, 2008 WL 2520816, at *28. The Court went on to write that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. The Court then added:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id.; see id. at *28, n.26.

Along the same lines, the Court found that the Second Amendment has never been construed to protect "the carrying of 'dangerous and unusual weapons.'" Heller, 2008 WL 2520816, at *28. This issue was more specifically identified in the Court's analysis of its prior decision in United States v. Miller, 307 U.S. 174 (1939). See Heller, 2008 WL 2520816, at *27. In Miller, the defendants had been indicted under the National Firearms Act of 1934 for transporting in interstate commerce an unregistered sawed-off shotgun. The Supreme Court held that the sawed-off shotgun at issue there was not among the "Arms" protected by the Second Amendment"[i]n the absence of any evidence tending to show

3

that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia." <u>Miller</u>, 307 U.S. 178.

In <u>Heller</u>, the Supreme Court re-affirmed that the <u>Miller</u> decision turned on the fact that the type of weapon at issue there - a sawed-off shotgun - was not eligible for Second Amendment protection. <u>Heller</u>, 2008 WL 2520816, at *26. As the <u>Heller</u> Court held, "<u>Miller</u> stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." <u>Id</u>. The <u>Heller</u> Court then went on to consider what types of weapons were protected under the Second Amendment, writing:

"We may as well consider at this point (for we will have to consider eventually) what types of weapons <u>Miller</u> permits. Read in isolation, <u>Miller</u>'s phrase "part of ordinary military equipment" could mean that only those weapons useful in warfare are protected. *That would be a startling reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in <u>Miller</u>) might be unconstitutional, machineguns being useful in warfare in 1939.* We think that <u>Miller</u>'s "ordinary military equipment" language must be read in tandem with what comes after: "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." The traditional militia was formed from a pool of men bringing arms "in common use at the time" for lawful purposes like self-defense. "In the colonial and revolutionary war era,

4

1  [small-arms] weapons used by militiamen and weapons used in
2  defense of person and home were one and the same." Indeed, that
3  is precisely the way in which the Second Amendment's operative
4  clause furthers the purpose announced in its preface. *We*
5  *therefore read* Miller *to say only that the Second Amendment does*
6  *not protect those weapons not typically possessed by law-abiding*
7  *citizens for lawful purposes, such as short-barreled shotguns.*
8  That accords with the historical understanding of the scope of the
9  right."
10 Id. at *27 (emphasis added)(internal citations ommitted); see id.
11 at *28 (addressing why "weapons that are most useful in military
12 service - M-16 rifles and the like - may be banned" consistent
13 with the right protected by the Second Amendment).
14      The Heller Court's references to the fact that weapons like
15 short-barreled shotguns and machineguns do not fall within the
16 scope of the Second Amendment right make clear that the indictment
17 in this case does not infringe on any constitutional right of the
18 defendant.  The charges are based on his possession of machineguns
19 and handgrenades.  These are not remotely close to the type of
20 weapon the Supreme Court has decided that individuals have a right
21 to maintain in their homes for self defense - namely, a handgun.
22 Indeed, Heller and Miller make clear that these types of weapons
23 are not covered by the Second Amendment.  The obvious potential
24 for substantial public safety risks presented by these firearms
25 and destructive devices plainly supports this conclusion.
26 ///
27 ///
28 ///

5

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the defendant's motion be denied.

DATED: July 30, 2008                    Respectfully submitted,

                                         McGREGOR W. SCOTT
                                         United States Attorney

                                         By /s/ Dawrence W. Rice, Jr.
                                           DAWRENCE W. RICE, JR.
                                           Assistant U.S. Attorney