McGREGOR W. SCOTT
United States Attorney
DAWRENCE W. RICE, JR.
STANLEY A. BOONE
Assistant U.S. Attorneys
Suite 4401, Federal Courthouse
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:07-cr-00151 OWW |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SUPPLEMENTAL |
| | ) | RESPONSE TO DEFENDANT'S MOTION TO |
| v. | ) | DISMISS THE INDICTMENT BASED ON |
| | ) | THE SECOND AMENDMENT. |
| | ) | |
| | ) | |
| JOHN McCARTNEY, | ) | |
| | ) | |
| Defendant. | ) | Date: August 28, 2008 |
| | ) | Time: 12:15 p.m. |
| | ) | Courtroom Three |
| | ) | Honorable Oliver W. Wanger |

The government submits the following supplemental brief and attachments in opposition to the defendant's motion to dismiss the indictment charging him with possession of machineguns, handgrenades, silencers, and an explosive device based on the Supreme Court's recent Second Amendment decision in <u>District of Columbia v. Heller</u>, 554 U.S. ---, 2008 WL 2520816 (2008).

**I.   There Is No Second Amendment Right To Possess Uncommon Weapons That Are Not Typically Possessed In The Home.**

Defendant is charged with possession of machineguns, handgrenades, silencers, and an explosive device, which are types of "firearms" under 26 U.S.C. § 5845 that can only be lawfully

1

possessed if registered with the federal government under 26 U.S.C. § 5841.  Defendant argues that he has a Second Amendment right to possess these weapons without registration or even attempting registration. There is no such right – as Heller makes clear – and as two circuits have easily concluded since Heller. See United States v. Gilbert, 2008 WL 2740453, at *2 (9th Cir., July 15, 2008) (unpublished) ("Under Heller, individuals still do not have the right to possess machineguns or short-barreled rifles, as Gilbert did[.]")(cited in government's July 30, 2008 initial response); and, United States v. Fincher, ___ F.3d ___, 2008 WL 3367573(8th Cir., August 13, 2008)("[U]nder Heller, [defendant's] possession of [a machinegun and unregistered sawed-off shotgun are] not protected by the Second Amendment.") (opinion attached).  Also, attached for the analysis therein is the decision of the United States District Court for the District of Connecticut in United States v. Zaleski, Case No. 3:06-cr-00282 EBB, (June 30, 2008), in a case nearly identical to the instant case.  Even if there were such a right, a person is not free to ignore registration and possess the firearm, thereby testing in a criminal prosecution the constitutionality of the requirement that the firearm be registered before possession.

   **a.  Firearms at issue in this case do not fall within the protections of the Second Amendment.**

     The firearm at issue in Heller was a handgun, not the machineguns, handgrenades, silencers and a destructive device involved here.  In explaining the scope of the Second Amendment, the Supreme Court explained both the nature of possession that is permissible, as well as the sorts of weapons protected by the

Second Amendment.  The Court concluded that the Second Amendment only addresses weapons "in common use," and as an historical matter, its scope was tied to "lawful weapons" militia members would bring from home "to militia duty."  128 S. Ct. at 2817.  The Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." Id. at 2815-16.

Following Heller, the test is not, as the Court explained, whether the weapons are "most useful in military service," an interpretation that would provide a right to keep "M-16 rifles and the like" at home.  Id. at 2817.  Rather, the test is whether the weapons are "typically possessed" in the home and "in common use" by "law-abiding citizens for lawful purposes."  Id. at 2815-16. Conversely, the Court found that the Second Amendment has never been construed to protect "the carrying of 'dangerous and unusual weapons.'" Id. at 2817.

This issue was more specifically identified in the Court's analysis of its prior decision in United States v. Miller, 307 U.S. 174 (1939).  In Miller, the defendants had been indicted under the National Firearms Act of 1934 for transporting in interstate commerce an unregistered sawed-off shotgun.  In Heller, the Supreme Court re-affirmed that the Miller decision turned on the fact that the type of weapon at issue there – a sawed-off shotgun – was not eligible for Second Amendment protection. Heller, 128 S. Ct. 2814.  The Heller Court held, "Miller stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons."  Id.  The Heller Court then went on the consider what types of weapons were

protected under the Second Amendment, writing:

> We may as well consider at this point (for we will have to
> consider eventually) what types of weapons *Miller* permits.
> Read in isolation, *Miller*'s phrase "part of ordinary
> military equipment" could mean that only those weapons
> useful in warfare are protected. *That would be a
> startling reading of the opinion, since it would mean that
> the National Firearms Act's restrictions on machineguns
> (not challenged in Miller ) might be unconstitutional,
> machineguns being useful in warfare in 1939.* We think
> that *Miller*'s "ordinary military equipment" language must
> be read in tandem with what comes after: "[O]rdinarily
> when called for [militia] service [able-bodied] men were
> expected to appear bearing arms supplied by themselves and
> of the kind in common use at the time." The traditional
> militia was formed from a pool of men bringing arms "in
> common use at the time" for lawful purposes like
> self-defense. "In the colonial and revolutionary war era,
> [small-arms] weapons used by militiamen and weapons used
> in defense of person and home were one and the same."
> Indeed, that is precisely the way in which the Second
> Amendment's operative clause furthers the purpose
> announced in its preface. *We therefore read Miller to say
> only that the Second Amendment does not protect those
> weapons not typically possessed by law-abiding citizens
> for lawful purposes, such as short-barreled shotguns.*
> That accords with the historical understanding of the
> scope of the right.

Id. at 2815-16 (emphasis added) (internal citations omitted); see

id. at *2817 (addressing why "weapons that are most useful in

military service –  M-16 rifles and the like – may be banned"

consistent with the right protected by the Second Amendment).

The Heller Court's references to the fact that weapons like

short-barreled shotguns and machine guns do not fall within the

scope of the Second Amendment right make clear that the indictment

in this case does not infringe on any constitutional right of the

defendant.  The charges in this case are based on the defendant's

possession of machineguns, handgrenades, silencers, and a

destructive device.  None of these is remotely close to the type

of weapon the Supreme Court has decided that individuals have a

right to maintain in their homes for self defense – namely, a

handgun.  Indeed, <u>Heller</u> and <u>Miller</u> make clear that these types of weapons are not covered by the Second Amendment.

To be blunt, the amount of violence involving firearms in America concerns the government and the government has a compelling interest in preventing it from getting worse.  See the attached statistics for the number and rate of firearm related homicides from 1999-2005, and the percent distribution of murders and non-negligent manslaughters by type of weapon from 1964-2006, published in the Sourcebook of Criminal Justice Statistics Online at http://www.albany.edu/sourcebook.  The potential for increased substantial public safety risks presented by permitting possession of machineguns, handgrenades, silencers and destructive devices is obvious.  One does not need to look beyond recent history, for example the incidents at Columbine High School and Virginia Tech to name only two; and but ask, "How many more would have been killed if the attackers had used machineguns, handgrenades, silencers and destructive devices?"

Typical handguns meet the test of "common use" and typical possession in the home and it is this feature that brings handguns, as a class of arms, within the scope of the Second Amendment.[1]  The firearms here, however, do not meet the threshold for a type of firearm that is within the  protection of the Second Amendment.  They are neither weapons in "common use" nor weapons

---

[1] That a class of firearms is eligible for Second Amendment protections does not mean that *any* possession of that arm is constitutionally protected.  For example, as noted in <u>Heller</u>, the restrictions on felons possessing firearms is presumptively constitutional and that remains true even if the firearm possessed is a handgun.

that people would typically possess in the home for lawful purposes like self-defense.  Rather, the weapons at issue here are of the sort of "dangerous and unusual" weapons that have historically stood outside of the right to bear arms.  See Heller, 128 S.Ct. at 2817 (citing 4 Blackstone 148-149 (1769))

Since Heller, the Ninth Circuit treated the validity of restricting machinegun and short-barrel rifle possession as sufficiently obvious that it found no error in a jury instruction that stated: "A person does not have the right under the Second Amendment, or under any other provision of the Constitution, to possess a machinegun. A person does not have a right, under the Second Amendment, or under any other provision of the Constitution, to possess a rifle with a barrel shorter than 16 inches that the person has not registered in the National Firearms Registration and Transfer Record." Gilbert, 2008 WL 2740, at *1. The Ninth Circuit observed: "Under Heller, individuals still do not have the right to possess machineguns or short-barreled rifles, as Gilbert did, and convicted felons, such as Gilbert, do not have the right to possess any firearms." Id. at *2.  That conclusion follows directly from Heller's discussion of the sorts of weapons that are and are not protected by the Second Amendment.

**b.  Seeking Registration a Pre-requisite to Challenging Firearms Statutes.**

Finally, registration requirements cannot be challenged by ignoring registration and possessing the firearm.  The plaintiff in Heller sought a license, was denied, and then sued.  The Supreme Court concluded that, as appropriate relief, he can now apply for a license and it will be granted.  128 S. Ct. at 2822.

If defendant wanted to challenge legally the registration requirements here, he had to at least seek registration.  As the Supreme Court explained in <u>Poulos v. New Hampshire</u>, 345 U.S. 395, 409 n.13 (1953) (quoting <u>United States v. Slobodkin</u>, 48 F. Supp. 913, 917 (D. Mass. 1943)):

> It is well settled that where a licensing ordinance, valid on its face, prohibits certain conduct unless the person has a license, one who without a license engages in that conduct can be criminally prosecuted without being allowed to show that the application for a license would be unavailing.  . . .  In short, the individual is given the choice of securing a license, or staying out of the occupation, or, before he acts, seeking a review in the civil courts of the licensing authority's refusal to issue him a license.  Likewise in the case at bar the defendants are given the choice of complying with the regulation, or not engaging in the regulated activity, or, before they act, petitioning the appropriate civil tribunals for a modification of or exception from the regulation.

The Court then provided several examples of the principle's application, one of which has particular relevance to the present case: "to allow applicants to proceed without the required permits to run businesses, erect structures, <u>purchase firearms</u>, transport or store explosives or inflammatory products, hold public meetings without making prior safety arrangements or take other unauthorized action is apt to cause breaches of the peace or create public dangers."  <u>Id.</u> at 409 (emphasis added).

That very principle was at issue in <u>Lewis</u>.  The defendant in <u>Lewis</u> attempted to raise the defense that his underlying felony conviction had been unconstitutionally obtained, and that the felon-in-possession law therefore could not lawfully be applied to him.  The Supreme Court rejected that claim, emphasizing that if a convicted felon believes that his prior conviction is invalid, he may not simply obtain a firearm in defiance of the statute.

Rather, he must "clear his status <u>before</u> obtaining a firearm."
445 U.S. at 65 (emphasis in original).  <u>Accord</u>, <u>e.g.</u>, <u>United</u>
<u>States v. Chambers</u>, 922 F.2d 228, 238-240 (5th Cir. 1991)
(defendant charged with possessing firearm while under felony
indictment, in violation of 18 U.S.C. § 922(n), could not raise
defense that indictment was defective; even if the indictment was
defective, the defendant could not "simply ignore it and
notwithstanding its pendency engage in the self-help of acquiring
a firearm. . . .  [I]n such a situation firearms acquisition
[must] be postponed until the validity of the indictment is
determined.").

The plaintiff in <u>Heller</u> followed those principles by seeking a
license and challenging its denial.  The defendant here did not.[2]
But in any event, the type of firearms at issue in this case are
simply not firearms within the scope of the Second Amendment's
protections.

---

[2]  To the extent defendant argues that he has a right to possess
any type of firearms he wishes, history does not support his claim.
To the contrary, the Second Militia Act, which was passed
contemporaneously with the Second Amendment, specified in detail
the weapons and ammunition that militia members were expected to
maintain and to bring when called to service.  <u>See</u> Act of May 8,
1792, ch. 33, § 1, 1 Stat. 271 (requiring each "able-bodied white
male citizen" to enroll in the militia and, within six months of
enrolling, to "provide himself with a good musket or firelock, a
sufficient bayonet and belt, two spare flints, and a knapsack, with
a pouch, and a box therein, to contain not less than twenty four
cartridges, suited to the bore of his musket or firelock, each
cartridge to contain a proper quantity of power and ball; or with
a good rifle, knapsack, shot-pouch, and powder-horn, twenty balls
suited to the bore of his rifle, and a quarter of a pound of
powder* * *").  Attached is an excerpt from the "Survey of U.S.
Army Uniforms, Weapons and Accouterments" from the U.S. Army,
Center of Military  History with illustrative photos.

## II.  Level of Scrutiny

To date, only the two district court cases attached have been found by the government touching on the unanswered question in <u>Heller</u> of what level of scrutiny the Court should apply to a restriction on an individual's right to bear arms.  In <u>United States v. Booker</u>, --- F.Supp.2d ---, 2008 WL 3411793 (D.Me.) (August 11, 2008), the district court discussed the different levels of scrutiny that might apply, stated that it was probably strict or intermediate scrutiny, and then held:

> "Rather than tackle this complex and unanswered question, the Court starts from a different place.  Heller teaches that even though the Second Amendment guarantees an individual right to bear arms, it is "not unlimited."  Id. at 2816.  <u>Heller</u> states that "**nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 2816-17.**  A useful approach is to ask whether a statutory prohibition against the possession of firearms by felons and the mentally ill is similar enough to the statutory prohibition against the possession of firearms by persons convicted of the misdemeanor crime of domestic violence to justify its inclusion in the "longstanding prohibitions" that survive Second Amendment scrutiny."
>
> "The Court concludes it does....."  2008 WL 3411793, *2 (**emphasis in original**).

In <u>United States v. Bledsoe</u>, 2008 WL 3538717 (W.D.Tex.) (August 8, 2008), the Court applied intermediate scrutiny and held:

> "In asserting that *Heller* imposes strict scrutiny analysis on statutes regulating firearms possession, the Defendant misinterprets the law. The Supreme Court majority in *Heller* expressly "declin[ed] to establish a level of scrutiny for evaluating Second Amendment restrictions," leaving that question to be settled later. *Id.* at *32.While the Supreme Court does make brief mention of strict scrutiny analysis in conjunction with the Second Amendment, the Court's discussion has nothing to do with laws *restricting* the rights protected under the Second Amendment. *See Id.* at *29.Rather, the Court's discussion concerns *proscriptions* of constitutional rights, not *restrictions,* as Defendant would argue. The statutes used to indict Defendant in no way proscribe gun possession generally among all people. Those statutes, instead, regulate the age and manner in which an individual may purchase certain types of firearms. The Supreme Court suggests that § 922 does not fall within the same class of statutes proscribing gun possession, such as the statute in question in *Heller. Id.*"Few laws in the history of our nation have come close to the severe restriction of the District's handgun ban."*Id.*
>
> Given that the Supreme Court declined to set a standard for which to evaluate Second Amendment regulations, this Court finds unwarranted Defendant's assertion that strict scrutiny, the most exacting form of scrutiny available, be used to evaluate the statutes in question in this case. Furthermore, the

Fifth Circuit has held that it would be inappropriate to analyze certain provisions of § 922 with strict scrutiny. *See United States v. Darrington,* 351 F.3d 632, 635 (With regards to an equal protection challenge to § 922(q)(1), the Fifth Circuit held, "Nor do we read *Emerson* as holding that ... any governmental restrictions on [the right to bear arms] must meet a constitutional strict scrutiny test, as Darrington argues."). Until the Supreme Court indicates otherwise, this Court will apply a lower form of scrutiny to laws that merely regulate, as opposed to proscribe, handgun possession. Moreover, as this Court found previously, the federal laws challenged by Defendant meet rational basis scrutiny (*See* docket no. 39).

**\*4** Between the highly deferential standards of a rational basis analysis and the exacting standards of strict scrutiny, however, lies intermediate scrutiny. "To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective." *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Furthermore, the statutory classification should reflect "a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may be fairly viewed as furthering a substantial interest of the state." *Plyler v. Doe,* 457 U.S. 202, 217-18, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). This Court finds that the public safety concerns discussed in the Court's previous order constitute important governmental objectives and, furthermore, that the statutes challenged by Defendant are substantially related to addressing those ends.

U.S.C. § 922(x) permits an individual who is 18 years old to

purchase a handgun from an individual seller, while § 922(a)(6) prohibits an individual under 21 years of age from buying a handgun from a federally licensed firearms dealer. As this Court previously discussed, the likely reason Congress passed the statute was to reduce handgun use in the commission of crimes in the United States. (*See* docket no. 39, fn. 6). To assert, as Defendant's contentions suggest, that regulations governing the sale of handguns for the 18-20 year-old age group do not further a substantial governmental interest is meritless, given the statistics suggesting that the vast majority of guns confiscated from 18-20 year old criminal defendants are handguns. (*See* docket no. 39, fn. 6). Therefore, this Court finds that on a direct challenge to § 922(a)(6), the statutory provision meets intermediate scrutiny analysis. Accordingly, Defendant's objection and motion to dismiss on its direct challenge to § 922(a)(6) is denied." 2008 WL 3538717, *3-*4.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the defendant's motion be denied.

DATED:  August 27, 2008                    Respectfully submitted,

                                           McGREGOR W. SCOTT
                                           United States Attorney

                                           By /s/ Dawrence W. Rice, Jr.
                                             DAWRENCE W. RICE, JR.
                                             Assistant U.S. Attorney